**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**UNITED STATES OF AMERICA**

**V.**                                                                 **NO. 1:24-CR-46**

**BRANDON LENOIR**

## OPINION AND ORDER

Claiming ineffective assistance of counsel, Brandon Lenoir moves pro se to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Because Lenoir fails to establish ineffective assistance of counsel and otherwise waived his right to collaterally attack his sentence, his § 2255 motion will be denied.

### I
### Background and Procedural History

On May 22, 2024, a federal grand jury in the Northern District of Mississippi returned a four-count Indictment against Brandon Lenoir. Doc. #1. Counts One and Two each charged Lenoir with distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and Counts Three and Four charged him with distributing fifty grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). *Id.* at PageID 1–2.

On November 13, 2024, pursuant to a plea agreement with the government, Lenoir pled guilty to Count One of the Indictment. Docs. #48, #50. At the change-of-plea hearing, in response to a series of questions by the Court, Lenoir confirmed that he was satisfied with his attorney's representation of him, had enough time to discuss his case with his attorney and have his attorney answer his questions to his satisfaction, and had specifically discussed with his attorney the charges in Count One, of which he was fully aware. Doc. #57 at 5–6. After the government described its evidence against Lenoir, Lenoir confirmed that he understood the evidence, "everything that was

said about [him] and [his] conduct [was] true and correct," it was his intent to plead guilty to the charges in Count One "because [he was] in fact guilty of those charges," and no one had threatened him or forced him to plead guilty. *Id.* at 8–10. And following the government's recitation of the substance of the plea agreement, Lenoir confirmed that he understood the plea agreement, including that he would waive his rights to appeal and collaterally attack his conviction and sentence except for any claims as to ineffective assistance of counsel or prosecutorial misconduct;[1] had discussed the plea agreement terms with his attorney; and the government accurately stated the plea agreement's terms as he understood them to be. *Id.* at 10–14. During such colloquy, the parties further clarified that the government agreed to dismiss the remaining counts against Lenoir after his sentencing should the Court accept the plea agreement. *Id.* at 12–14; Doc. #48 at 1.

Following the Court's acceptance of Lenoir's guilty plea, the Court ordered the preparation of a presentence investigation report ("PSR").[2] Doc. #57 at 19–20; Doc. #51 at 1. The PSR held Lenoir responsible for the distribution of 6,854.28 kilograms of converted drug weight (for all four counts of the Indictment) which, pursuant to United States Sentencing Guidelines § 2D1.1, resulted in a base offense level of 32. Doc. #66 at 6, 7 (citing U.S. SENT'G GUIDELINES MANUAL § 2D1.1(a)(5)(c)(4) (U.S. SENT'G COMM'N 2024)). Lenoir received a three-point reduction for acceptance of responsibility, resulting in a total offense level of 29. *Id.* at 7–8 (citing U.S. SENT'G GUIDELINES MANUAL § 3E1.1(a), (b)). Because Lenoir's criminal history points totaled seven or more points and he committed the offense while under a criminal justice sentence, one additional

---

[1] Specifically, the Court asked Lenoir, "[D]o you understand that if you plead guilty and the Court accepts your plea and the Plea Agreement that you will have effectively waived your right to appeal and collaterally attack your conviction and your sentence except for any claims as to ineffective assistance of counsel or prosecutorial misconduct?;" and Lenoir answered that he understood. Doc. #57 at 14.

[2] Earlier in the hearing, Lenoir answered affirmatively the Court's questions whether he understood that the Court would be guided by the United States Sentencing Commission's Guidelines in determining his sentence and that the Court would not be able to determine his guideline sentence until after the presentence investigation report was prepared. *Id.* at 15.

point was added to his criminal history score, which resulted in a criminal history score of 10 and a criminal history category of V. *Id.* at 17 (citing U.S. SENT'G GUIDELINES MANUAL § 4A1.1(e)). Given these numbers, the PSR calculated Lenoir's guideline imprisonment range to be 140–175 months. *Id.* at 24.

Lenoir's counsel filed objections to the PSR on Lenoir's behalf on January 22, 2025. Doc. #58. The objections specifically challenged "the relevant conduct analysis" and "[Lenoir's] criminal history determination." *Id.* at PageID 180. As to the relevant conduct calculation, Lenoir, through his counsel, argued that the drug transactions in Counts Two, Three, and Four should not have been used to calculate the total drug weight for which he was held responsible; but that he should only be held accountable for the quantity of the transaction associated with Count One. *Id.* at PageID 180–82. As to the criminal history calculation, Lenoir, also through his counsel, argued that the Count One offense was not committed while under a criminal justice sentence because he had a "Discharge Order" declaring that his state term of post-release supervision was terminated as of March 27, 2023.[3] *Id.* at 182; Doc. #58-5.

On January 24, 2025, Lenoir's counsel filed a nine-page sentencing memorandum on Lenoir's behalf which detailed his familial history, his steady record of employment for nearly two decades, and his "spirit of contrition." Doc. #61. Lenoir's counsel attached to the memorandum character reference letters from Lenoir, Lenoir's mother, and a family friend. Docs. #61-1, #61-2, #61-3. Lenoir's counsel further submitted other character reference letters on Lenoir's behalf. Docs. #56, #62.

Lenoir appeared with his counsel for sentencing on February 19, 2025. Doc. #67. At the

---

[3] Lenoir's counsel conceded that there was an order demonstrating that Lenoir "was in fact under a criminal justice sentence, *i.e.*, state post release supervision, at the time of the instant offense" such that his counsel could not "in good faith contest the Criminal History Calculation based on his reading." Doc. #58 at PageID 183; Doc. #58-6.

sentencing hearing, the Court first confirmed that Lenoir had the opportunity to review the PSR and its addendum, and to discuss objections to them with his counsel. Doc. #81 at 3–5. The Court then addressed Lenoir's objections, beginning with the objection related to the relevant conduct calculation. *Id.* at 7–14. Lenoir advised the Court that in pleading guilty to Count One, he believed he would only be held accountable for the quantity of drugs forming that transaction and did not realize he could be held responsible for the quantities from the counts to be dismissed. *Id.* at 12. The Court overruled Lenoir's objection, explaining that the Sentencing Guidelines allow it to look at "similar circumstances that are proximate in time and the nature of them in order to calculate [the] base offense level." *Id.* at 12, 14.

As to the objection regarding the criminal history calculation, Lenoir argued that something should have been done in state court to eliminate his remaining contingency sentence that was not done. *Id.* at 15–20. The Court overruled the second objection because Lenoir "still had, at the time that [he] committed the crimes in this case, a remaining contingency portion of [his] sentence;" and it could not "take into effect anything that has not been ordered otherwise in the state court." *Id.* at 21.

After overruling Lenoir's objections to the PSR, the Court adopted "the presentence report in full as [its] findings of fact;" advised Lenoir of his offense level, criminal history category, and guideline ranges; addressed the factors under 18 U.S.C. § 3553(a); heard statements from Lenoir and his counsel as to those factors; explained its basis for the sentence, including Lenoir's voluminous criminal history; and imposed a sentence of 140 months of imprisonment on Count One, reminding Lenoir that he had waived all his rights to appeal or collaterally attack his conviction and sentence except as to claims of prosecutorial misconduct or ineffective assistance of counsel relating to the validity of his appeal waiver or the validity of his guilty plea. *Id.* at 22–

4

42, 45–46.  The government then moved to dismiss Counts Two, Three, and Four against Lenoir, which the Court granted.  *Id.* at 47.

On March 11, 2025, Lenoir submitted a two-page pro se letter which the Court construed as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  Doc. #75.  On March 13, 2025, the Court directed Lenoir to complete and return the standard form for § 2255 motions.  Doc. #76.  Lenoir submitted his pro se amended § 2255 motion on the standard form on May 5, 2025.  Doc. #84.  The government filed a response in opposition on July 8, 2025.  Doc. #90.  Lenoir did not reply.

**II**
**Standard**

A motion brought pursuant to § 2255 is a "means of collateral attack on a federal sentence." *Beras v. Johnson*, 978 F.3d 246, 251 (5th Cir. 2020) (per curiam) (quoting *Cox v. Warden, Fed. Det. Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990)).  There are four separate grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255:  (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  A collateral attack limits a movant's allegations to those of "constitutional or jurisdictional magnitude."  *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (citation omitted). Accordingly, relief under § 2255 is reserved for violations of "constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice."  *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).  After a defendant has been convicted and exhausted or waived any right to appeal, a "[c]ourt is entitled to presume that [he] stands fairly and finally convicted."  *United States*

5

*v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

### III
### Discussion

In seeking § 2255 relief, Lenoir argues that his trial counsel was ineffective for three reasons: (1) failing to provide him "with a copy of the presentence investigation report prior to sentencing;" (2) "fail[ing] to object to points during the calculation of criminal history;" and (3) "fail[ing] to object to altering the plea agreement … where such increased the penalty [he] and the government had agreed upon." Doc. # 84 at 5, 6, 8. The government responds that "Lenoir offers no facts or evidence to show [his] counsel's representation was deficient" because "the record clearly shows all of Lenoir's pro se claims are factually incorrect;" Lenoir could not be prejudiced by "[his c]ounsel's failure to raise a meritless argument … because the result of the proceeding would not have been different had the attorney raised the issue;" and "Lenoir's claims fail on the merits because he made a knowing and voluntary waiver of his right to appeal and to collaterally attack his sentence." Doc. #90 at 8, 10 (emphasis omitted).

### A. Ineffective Assistance of Counsel

Claims for ineffective assistance of counsel are governed by a two-prong test which requires the movant to demonstrate "(i) that his counsel's performance was deficient because it fell below an objective standard of reasonableness and (ii) that the deficient performance prejudiced the defense." *United States v. Lincks*, 82 F.4th 325, 330 (5th Cir. 2023) (citing *Strickland v. Washington*, 466 U.S. 668, 689–94 (1984)). The "deficiency" prong requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 330–31 (quoting *Strickland*, 466 U.S. at 687). Under the "prejudice" prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

6

been different." *United States v. Owens*, 94 F.4th 481, 486 (5th Cir. 2024) (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86, 112 (2011).

Absent an affirmative showing of deficient performance and prejudice, there is no merit to a claim of ineffective assistance of counsel. *See, e.g., Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (no merit to ineffective assistance of counsel claim "[i]n the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced [the defendant's] right to a fair trial") (quoting *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992)). "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Id*. (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

### 1. PSR

Lenoir contends that his "counsel did not ensure that [he] receive[d] a copy of the presentence investigation report prior to his sentencing hearing, nor did [he] waive his right to said report;" and he "was prevented from being able to be prepared to object to matters in the [report] where [he] was denied the benefit of prior disclosure of the report to him prior to sentencing hearing, violating Rule 32(f), Federal Rules of Criminal Procedure." Doc. #84 at 5. The government responds that "the record clearly demonstrates not only did Lenoir review [the PSR] prior to sentencing, the Court reviewed portions of the PSR Lenoir objected to with him at sentencing." Doc. #90 at 8–9.

The record clearly negates Lenoir's claim that he was not shown the PSR prior to sentencing. During the sentencing hearing, Lenoir advised the Court that he saw the PSR through a Zoom call with his attorney, at which time he told his counsel the portions of the PSR to which

he wanted to object.  Doc. #81 at 3–5.  The Court at least twice asked Lenoir whether he had seen the PSR and discussed it with his attorney, and Lenoir responded affirmatively each time.  *Id*. at 3–5.  So, Lenoir's allegation in this regard has no factual basis and is without merit.

### 2. Criminal history calculation

Lenoir contends that "[d]uring the assessment of [his] criminal history the government relied upon state court cases for which [he] was never convicted;" "[t]here was no evidence presented at [his] sentencing hearing which shows [he] committed the state charge;" "[his] attorney failed to object to said use of said state case;" and "[b]ut for [his] attorney's failure there is a reasonable probability that the outcome of [his] sentence would have been less than the sentence [he] was given."  Doc. #84 at 6.  The government responds that "[Lenoir's] counsel filed the exact same objections that Lenoir claims were not filed," and "the addition of 1 criminal history point … was addressed at length by the Court at sentencing."  Doc. #90 at 9.

The record again contradicts Lenoir's assertions.  As relayed above, Lenoir's counsel filed an objection to the PSR's criminal history calculation, specifying that Lenoir objected to the point added for the offense being committed while under a criminal justice sentence because he had a Discharge Order indicating otherwise.  Doc. #58 at PageID 182–83.  The Court addressed this issue at the sentencing hearing and, in overruling the objection, explained that Lenoir remained subject to the suspended portion of his sentence at the time he committed the offense.  Doc. #81 at 14–21.  Because the record demonstrates that Lenoir's counsel did file an objection on Lenoir's behalf as Lenoir requested, Lenoir's argument regarding his criminal history calculation is without merit.

### 3. Alteration of plea agreement

Finally, Lenoir claims that "[b]efore sentencing, [he] made an agreement with the

8

government [which] included [him] pleading guilty to Count 1 for the dismissal of Counts 2-4;" "sometime prior to sentencing the government inserted in the record an altered plea agreement … that says the dismissal of Counts 2-4 will not occur until after sentencing;" "[t]his alteration would tend to allow the judge to consider the conduct in Counts 2-4 because they remained pending;" and "but for [his] counsel's failure to object to the alteration of the plea agreement the court could not have considered something for which a jury had never found him guilty of in increasing his sentence." Doc. #84 at 8. The government responds that "[n]othing in the plea agreement was altered to Lenoir's detriment;" and "[his c]ounsel's failure to raise a meritless argument cannot form the basis of a successful ineffective assistance of counsel claim." Doc. #90 at 9, 10.

Lenoir seems to take issue with what he describes as an "alteration" to the plea agreement. At the change of plea hearing, the parties discussed and confirmed that the government agreed to dismiss the remaining counts after sentencing should Lenoir's guilty plea as to Count One be accepted, and a provision to that effect was handwritten by counsel during the hearing and initialed by the Assistant United States Attorney, Lenoir's attorney, and Lenoir himself. Doc. #48 at 1; Doc. #57 at 12–14. Lenoir's argument really stems from Lenoir's mistaken belief that, because he only pled guilty to Count One, he only should have been held responsible for the drug quantity from the drug transaction underlying Count One, and not the quantities underlying the remaining counts.

Contrary to Lenoir's assertion, defense counsel objected to the consideration of the drug quantities from Counts Two, Three, and Four. Doc. #58 at PageID 180–82. And as explained at the sentencing hearing,[4] the Sentencing Commission authorizes the consideration of relevant conduct in determining the offense level, which may include conduct charged in counts that have

---

[4] Doc. #81 at 12–13.

9

been dismissed. U.S. Sent'g Guidelines Manual § 1B1.3; *see United States v. Byrd*, 898 F.2d 450, 451, 452 (5th Cir. 1990) (per curiam) ("[S]entencing court [may] consider as 'relevant conduct' conduct charged in dismissed counts of the indictment which the defendant denies committing[.]"). So, regardless of whether Counts Two, Three, and Four were dismissed before or after sentencing, the drug quantities from those counts could have been (and were) considered as relevant conduct. Lenoir's plea-agreement-alteration argument fails.

### 4. Summary

Lenoir's claims fail because he has not shown that his counsel provided deficient performance, nor has he shown that any prejudice resulted from his counsel's alleged deficient performance. As described above, Lenoir's attorney negotiated a plea agreement providing for the dismissal of three of the four counts of the Indictment against Lenoir, filed objections as requested, and presented arguments as to those objections at the sentencing hearing. These actions by Lenoir's counsel hardly constitute deficient performance. Even had Lenoir established deficient performance, he has not shown that his sentence would have been different absent counsel's performance. Section 2255 relief based on Lenoir's ineffective assistance of counsel arguments will be denied.

### B. Waiver

In its response, the government argues that Lenoir "made a knowing and voluntary waiver of his right to appeal and to collaterally attack his sentence;" "the waiver should be enforced" because Lenoir "makes no attack on [its] validity;" and Lenoir filed his motion "in violation of the terms and conditions of his agreement under the guise of ineffective assistance of counsel." Doc. #90 at 10.

"The 'general rule' is that knowing and voluntary collateral-review waivers are

10

enforceable." *United States v. Jones*, 134 F.4th 831, 839 (5th Cir. 2025) (quoting *United States v. Barnes*, 953 F.3d 383, 388–89 (5th Cir. 2020)). The Fifth Circuit has "recognized only two exceptions: 'first, ineffective assistance of counsel, and second, a sentence exceeding the statutory maximum.'" *Id*. (quoting *Barnes*, 953 F.3d at 389).

As mentioned above, Lenoir's plea agreement contained a waiver of his right to collaterally attack his conviction and sentence, and Lenoir confirmed at his change of plea hearing that he understood he was waiving such right. Doc. #48 at 2; Doc. #57 at 14. Lenoir does not attack the validity of the waiver and does not argue that his sentence exceeds the statutory maximum. Though Lenoir frames his grounds for § 2255 relief as ineffective assistance of counsel, to the extent he actually intends to challenge the substance of the relevant conduct and criminal history calculations, such challenge is barred by his waiver.

### C. Summary

Because Lenoir has not demonstrated ineffective assistance of counsel and because he otherwise waived his right to collaterally attack his conviction and sentence, his § 2255 motion is denied.[5]

### IV
### Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Proceedings for the United States District Courts, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Lenoir must obtain a COA before he may appeal the denial of his

---

[5] No evidentiary hearing on Lenoir's § 2255 motion is warranted. An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. 28 U.S.C. § 2255(b); *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam). It is the movant's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir. 1982). Where, as here, there is no "independent indicia of the likely merit" of the assertions in the motion, a hearing is not required. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (citation omitted).

§ 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). Because Lenoir's § 2255 motion is rejected on its merits, he "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to COA determination in a § 2255 proceeding). Applying this standard, the Court concludes that a COA should not issue.

## V
## Conclusion

Lenoir's § 2255 motion to vacate, set aside, or correct his sentence [84] is **DENIED**. A certificate of appealability is **DENIED**.

**SO ORDERED**, this 15th day of June, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**